2010-1451 DELL PRODUCTS v. United States Good morning. Good morning. Good morning. Yes, Judge Weiss. Does the sale take place when, from the delivery to the customer? Well, everything the retail customer can do to complete that sale has already been done. Oh, that's, you're not answering my question. Under the UCC. I'm not a UCC expert. I don't know. I'll take your word for the fact that under the UCC, perhaps the delivery is the final step. Is the sale. The sale doesn't take place until the delivery. Honestly, I'm not a UCC expert. That was, I did see UCC law 20 years ago, but I don't recall. Let's assume that that's correct, that the delivery, that the sale takes place upon the delivery to the customer. This is then susceptible to an interpretation that it's put up, packaged for sale, the sale taking place later. Right? Wrong. Wrong. Respectfully. Okay. There's a number of reasons why Dell's position should fail here. The principle one, or the simplest one to even comprehend is that retail customers do not put up goods for sale. Sellers do. Since Dell as the seller did not make the decision as to what goods would be grouped together for shipment to goods put up together for retail sale. But the sale takes place on the delivery. Why can't it be packaged for delivery to the customer? Because it's a truck. Sorry. For sale, right? The sale, the packaging, or the putting up, or the offering, it really, the argument over the phrase put up is really a non-issue. Because you could put what Mr. Roll is pressing as package or what the court found to be correct as offered or displayed for sale. It all fits. It has to be in anticipation of a sale. So you're saying that the date on which the sale formally takes place is not governing because these are put up for sale in anticipation of sale. That is correct. In advance of the sale, et cetera. That is correct. For sale means offered for sale. For sale means in anticipation of a sale. Yeah, being offered for sale as opposed to the conclusion of the sale. Correct. And the only decision a retail customer has to make with respect to a GRI 3B set is buy it or don't buy it. But that's exactly the opposite of the way Dell sells its products, the way these products came into being in the same box. The ability of a retail customer to choose from a whole buffet of individually priced and individually offered products defeats the purpose of GRI 3B. Now, would you agree that if Dell, and they do, sold a group of products together as option A, you can get the following set of items. Option B is another set of items, a slightly trimmed down set, and option C is the really bare bones, but you still get a couple of options along with your basic computer. If they had those three options, and then the fourth choice is you just do it a la carte. You pick each and every item that you want. That the first three would satisfy the requirements of the GRI, assuming that they had them boxed together? No. And why not? Because at the beginning of your question, you said as Dell does. I actually have bought a Dell computer, and I know that those options are themselves fully customizable. They're simply suggestions of what groupings might go together. Okay, let's suppose it's not Dell, but it's somebody else as to whom the options are fixed. You choose this option, that's what you get, sort of the way cars are. I mean, if you choose the X option, this is the collection of features you get. But if you want, you can click on, I want to customize my order, but you don't. If you order either option A or option B or option C, that would be put up together for retail sale, correct? Yes, at a fixed price. Even though there's bunches of options. You could have any A through C or A through L in terms of your package options, but each of the package options would satisfy the GRI? If each package is fixed for a fixed price, and there's no substitutions allowed, yes. Each of those could absolutely be put up for retail sale. What do you mean by no substitutions allowed? Because in the hypothetical, it can be customized. You can say, well, I like option A, but I want to substitute this thing for that thing. I understand that when the substitution takes place, you would say that that's no longer put up for sale. But the fact that substitutions are possible and that you can create a customized package doesn't deprive option A of being a retail set. I might have misunderstood the hypothetical. Actually, I think Judge Knight carried the hypothetical one step farther, but that's a good point to tease out. As I understand your position, you would say you would not say that if you can modify the fixed option, that that fixed option is at this point still a set, right? As long as it's just sort of a proposed group of... I should really take a step back and not be so emphatic in agreeing with your hypothetical because the assumption that I was making with your options was that they all contribute to a specific activity or to a primary purpose. In your car option, if you have a bunch of different packages, but you also get... I don't even know what else could it be. You could get a bicycle as a bonus. No, we can assume. So my assumption was... We're staying with the same activity. Okay. If they all serve the primary purpose, if it was customizable, then you would, in fact, be in the same situation we're here now because we have a functional unit consisting of a computer, a power cord, and a primary battery. Everything else in the box is optional. We're not in the same place we are now because they didn't offer this as a set together for a fixed price. But the hypothetical says, suppose they did offer a combination of the computer and the secondary power source and other related things as part of a single option A for $1,514. But you could say, well, I don't want option A. I want to make my own package. Does the fact that you can make your own package change it from being a retail set? It does because it's no longer the seller putting up the product as a grouping for retail sale. I don't understand that. I'm sorry. GRI 3B allows for peculiarity. As we all know, goods are supposed to be classified as they are entered or imported. GRI 3B allows for a variation on that where shoes might be classifiable as baseball bats. Or in this case, Dell, which doesn't disagree that a battery is classifiable as a battery when imported separately, Dell now says this battery should be classified as a computer. So according to you, the only way you can get the benefit of the retail set is to tell the customer there's no way that you can buy these items individually. You either take it or leave it, and we only sell these things in sets. Well, it sounds a little harsh, but that is what GRI 3B requires. GRI 3B allows for a specific benefit. Hold on a minute now. Let me make sure I understand your answer to that. If I understand our hypothetical,  but this would be the situation. Let's say Hewlett-Packard, so we get away from Dell, is selling a group of options, which if you buy that option, you get everything in the package, and it's in a box that's sitting there in the warehouse and ready to go if you ask for option A. You can say, I want option A, but I don't want the additional battery, in which case they will take the items in option A, take out the battery, and sell it to you in effect a la carte. You still treat the box, I take it, as a set put up for retail sale, and anybody that orders the box, that gets treated as a set, even though people who order something other than the contents of the box, which they're perfectly free to do, those items get treated separately. Isn't that what you're saying, or is it? In fact, that's pretty much how Dell does sell their stuff. Not this particular product, right? Can I clarify your hypothetical? Yes, please. Is the price adjusted when you remove the battery? Sure. Then it's not a set, because it's not fixed. It's not a unit. They do have a set of the, let's say, computer and speakers, and so forth. That set, they'll sell you for $1,100, and that's option A, fixed. Now, you can go a la carte and get the same computer without the speakers for $1,050. The fact that you can go a la carte doesn't render the set any less a set, does it? If the set is not immutable, then yes. You're saying you can remove the battery and the price will be... It's immutable. If you order the set, that's what you get, and for a special price, you can't change it. Remember, it's not simply the word set. It's set put up together for retail sale, that we're referring to. Can I just clarify what's coming up there? In this particular case, what the government allowed was that the primary battery and the power cord get packaged up. That was okay. That was all included in the computer. That was classifiable as a functional unit, yes. Those were... Well, if in that case, we happen to know, and I don't know whether it's correct or not, if a customer could come into Dell and say, look, I don't need your primary battery and your power cord, so just give me $1,500 off the set, and I just want to buy the computer, that wouldn't lead the government to then say, no, no, no, no, we're not going to treat this as a set, right? It's still treated as a set because that's the way it's put up for sale, right? Respectfully, no, and that's why I specifically just said that those were classifiable as a functional unit. There's a difference between a functional unit and a GRI-3B set. Functional units under the... I forget what section number. It's the section that includes the automatic data processing equipment. That's GRI-1 because that's pursuant to a section note, so functional units, which is what the primary battery, the power cord, and the computer would be, we're at GRI-1 at this point, so we're not talking sets at all. We're talking sets only when you add that function, all this other stuff to a functional unit, which is what we're talking about here, and so it's kind of apples and oranges. I mean, Dell did make a functional unit argument down below it was rejected, and it's not here on appeal. Let's suppose there's a set put up of items A, B, and C, and you're not allowed to make any substitutions, but you don't have to buy sets. There's also an a la carte menu, and you can assemble individual items from the a la carte menu, but it's not referred to as substituting things into set. Is the set then a retail set? Maybe. It depends. I thought your answer would be of course. Noncommittal. So what if you can buy things a la carte? That doesn't affect the question of, I mean, let me give you an example from an industry I actually know something about. Importing telescopes from China. Typically, consumer telescopes are sold in a package. You get the telescope, you get three eyepieces, and you get a finder scope. It's a single package. It's a set, right? Yes, it should be. Presumably, it's advertised that way. Sure. It's advertised. You get a special break on price. It's all in the same box. It's ready to go. It's also limited by either the supplier or the importer, not the retail customer. That's right. But you know what? Many of those companies, if you ask them to buy the eyepiece separately, to buy an eyepiece, just, I want an eyepiece. I want the same eyepiece that comes with your set. They'll say, sure, we'll sell you the eyepiece.  Absolutely not. Well, that was just Stan's question. Again, you guys zoned out. I apologize. No. I mean, the fact that you've got an a la carte option out there doesn't mean that the sets are no longer sets. By no means. Okay. For example, we have an example of a ruling, and I'll speak very quickly because I only have 17 seconds, of a foreign trade zone that put together, in the foreign trade zone, they put together a camera, a few lenses, and some of the goods had been brought in and duty paid, and some of them were brought in afterwards. And that was a set. It was advertised in catalogs as a grouping, a fixed grouping for a specific price. And when it came out of the foreign trade zone, the condition was as a set. And customers had no problem classifying that under GRI 3B, because the grouping was fixed, offered for sale, displayed for sale, as a unit. Your problem is if the seller will open the packaging and substitute things in it. What you want them to do is to say, no, no, these sets come the way they are. We're not going to open that package and substitute something else in it. But if you want to buy it a la carte, you can do it. That's sort of the line you're going. Sort of. But if it's a grouping where the retail customer is given the option of buy it or don't buy it, it's probably a set put up together for retail sale, because it's not the retail customer that can modify the grouping. Thank you. Is there anything else? I'm sorry. Did you have a thought you were going to complete? No, no. You look like you might have another point. Oh, no, no, no. Thank you very much. Thank you. And let's see. Mr. Roll, you have several minutes. Thank you. This is actually very interesting to actually sit down and listen to, because a lot of the hypotheticals and the fact patterns that everyone was grappling with, I think, are exactly the things that the decision in Citroen and in this court's decision to meet a copy star were designed to avoid, which is to get into these factual determinations of exactly what happened. How was it fixed? Did you offer the a la carte option? All of which is looking at things prior to import. In the Citroen case, where the pearls were worn in Paris before they were actually brought in the air loose, the Supreme Court in that case said, no, no, no. What happened in Paris stays in Paris. What we care about is at the border, were they strung or unstrung? And that was determinative for that case. And here, I think, in this case, as a matter of policy, it makes a lot more sense to, using the example, I don't know if it was yours, Judge Bryson's, or yours, Judge Dyke, about you have option A, B, C, which are all sort of fixed items. And then option D was the, you can build your own. And in option D, if we pretend the consumer built their own that wound up being the same as option A, you're going to have two goods coming in that are going to be treated differently. Under the government's view and the lower court's view, option A, because it was fixed prior to import, would get one tariff treatment, yet option D, because it was built up a la carte, will not. Same thing if you take out a good, right? You could have the set have one tariff treatment if it's fixed and they bought the price fixed menu, if you will. And if they take out a battery, it won't be. But yet, if that same seller starts to say, we know a lot of people that are taking out the extra battery or they're adding an extra battery, and they say, well, you know, starting next month, let's just put up there as a menu choice, if you will, a computer with two batteries. Then we've satisfied the government's criteria of it being fixed and somehow held out there. Yet, the imports that came in in the first month, before they did that option, the fixed option, they're going to get one duty treatment and the imports in February or the next month will not. Yeah, but your problem is with the language. And it's not put up, which does mean packaged. It's for sale. And if you look at the dictionary, for sale doesn't mean sold. It means offered for sale, exhibited for sale. So for sale probably means put up and exhibited for sale. What's your response to that? Oh, just on that language, I believe that was your first question to me in the first half of my presentation earlier. When you say that the problem we have is that the language says for sale, you're reading from GRI 3, I believe. Right. Which is the statute. That's what you're charged with interpreting. But we're all in agreement, at least in the lower court and here in our briefs, that what that phrase means is that three-part test. And the three-part test in the third criteria speaks about suitable for sale. It sounds like exhibited for sale, offered for sale, suitable for sale. It doesn't sound as though it's dealing with the actual final sale of the item. But doesn't suitable for sale, and I know there was some discussion of this in the government's brief, is foreseeing, you're reading the word for sale as a future event that will take place. Well, that's the way the dictionary tends to define it. I would be the first to concede and say that is a reading of how that could be read. But I think it's equally plausible, and particularly when one looks at the explanatory notes and the thousands of other rulings that have been issued by the agency, that's not been the reading of it, meaning is there actually a sale that's taking place. Rather, the reading has been, is it of a kind that could be sold, which is focusing on, again, it's packaging, how it was packaged. The last thing I wanted to just add, and I know I'm almost out of time here, just again as a policy matter, if you were to uphold the lower court decision, it seems to me that it's going to, I don't want to say defeat e-commerce, but it's certainly working against the trend of how business is running, because then the solution will be, if you're Dell, okay, let's instead of having the customer choose a la carte, what we'll do is we'll come up with every possible permutation we can think of. We'll have millions of web pages that the consumers are going to have to go through to find the exact one that matches what their la carte combination is going to be, and that certainly can't be good as a policy matter to force companies to have so many web pages. And with that, I thank you. Thank you, Mr. Rolfe.